SHERMAN (LAWRENCE v.). See Case No. 8,144.

---

## Case No. 12,766.
### SHERMAN v. MOTT.

[Cited in Sherman v. Mott, Case No. 12,767. Nowhere reported; opinion not now accessible.]

---

## Case No. 12,767.
### SHERMAN et al. v. MOTT et al.

[5 Ben. 372;[1] 15 Int. Rev. Rec. 56; 11 Am. Law Reg. (N. S.) 716; 7 Am. Law Rev. 574.]

District Court, S. D. New York. Nov., 1871.

COLLISION—VESSEL AT ANCHOR—INEVITABLE ACCIDENT.

1. A brig. a schooner, and a bark lay at a wharf at Galveston, Texas. A heavy storm

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

arose, which broke the brig loose from the wharf, but she was brought up by her anchors about 75 or 100 yards from the schooner. Not long after, the bark was driven against the schooner, injuring her, so that there was danger of her sinking at the wharf. The master of the schooner thereupon, in order to save her, cut her adrift, but, before her anchors could be let go, she was driven upon the brig, in spite of all efforts to the contrary. The owners of the brig filed a libel against the owners of the schooner to recover for the damage: *Held* that, inasmuch as the act of the master, in cutting loose from the wharf, was a voluntary one, the collision was not an inevitable accident.

2. The schooner was liable for the collision. [Cited in The Chickasaw, 38 Fed. 361.]

[This was a libel by Benjamin P. Sherman and others against John W. Mott and others to recover damages sustained by collision.]

F. R. Sherman, for libellants.

E. H. Owen, for respondents.

BLATCHFORD, District Judge. The libellants, owners of the brig Isola, file their libel against the respondents, owners of the schooner Anne E. Glover, to recover for the damages sustained by the libellants through a collision which took place between the brig and the schooner, in the harbor of Galveston, Texas, on the 3d of October, 1867. On the morning of that day the brig and the schooner were both of them lying, heading to the westward, with their port sides against the outer end of a wharf which was in the shape of the capital letter T. The brig lay farther to the westward than the schooner did, and was in ballast, ready for sea. The schooner lay with her bow toward and near to the stern of the brig, and was loaded with cargo, having just arrived from sea and not yet discharged. Astern of the schooner lay a bark with her starboard side to the wharf and her stern to the stern of the schooner. These three vessels were all of them made fast by lines to piles on the wharf. A violent wind arose, blowing quartering on the wharf, from abaft the beam on the starboard sides of the brig and the schooner. As the wind increased, the brig broke loose from her moorings, tearing out the piles to which she was fastened, and was driven along the face of the wharf until she cleared the end of it, when an anchor from her bow caused her stern to swing around by the west, until she was brought by the anchor head to the wind, when a second anchor was put out, which brought her up, so that she rode safely at anchor, at a distance of from 75 to 100 yards from the schooner. Not long afterward, the stern of the bark was driven by the wind against the stern of the schooner, and broke in the stern of the schooner, so that the sea entered, and there was danger that the schooner would sink, with her cargo, at the wharf. In this emergency, as stated in the answer, the master of the schooner, "acting for the benefit of all concerned, for the purpose and with the motive and intention of saving her

and her cargo from total loss, cut her loose from her moorings, but before her anchors could be let go, and she could be thereby brought up, she was, notwithstanding every effort which it was possible to make to the contrary, driven upon the brig." The answer sets up that it was impossible, under the circumstances, to prevent the collision; that such collision, so far as respected the schooner, arose from an inevitable accident, by reason whereof each vessel should sustain her own loss; and that there was no fault on the part of the schooner. The brig was greatly damaged by the collision, and the schooner, after remaining for some time in contact with and entangled with the brig, was cleared, and then drifted still further, until she grounded in shoal water.

The contention on the part of the respondents is, that, inasmuch as the schooner was in a proper place when she was cut loose, and was sufficiently secured to the wharf, and it was proper for her safety and that of her cargo to cut her loose, after she had been injured by the bark, so that she might be driven by the wind and drift ashore in shoaler water, the case is one of inevitable accident, or vis major, unless there was some fault or negligence on the part of those in charge of her, in managing her after she was cut loose, whereby she collided with the brig. I cannot assent to this view of the law as to inevitable accident. The act of the schooner, in being adrift, was, on the pleadings and proofs, a voluntary act on her part. It was wilful and deliberate. It was done to save herself from a greater peril by endeavoring to incur a less one. It is established, by the proofs, that, if she had not cast herself loose, she would have remained where she was, only, perhaps, sinking, and would not have collided with the brig. A collision would have been impossible if she had not cut herself loose, as a matter of voluntary choice. How, then, can it be properly said that the collision was an accident which could not have been avoided, when it clearly appears that it would have been avoided, if the schooner had not thus voluntarily chosen to cut herself loose? It may be that, after she was cut loose, all proper skill and caution on her part were observed. But that is not the proper test. In cutting herself loose she took the risk of hitting the brig, and must bear the consequences of having hit her. The brig ought not to be held liable to bear the risk of the voluntary act of the schooner, adopted for the benefit of the schooner, and having no connection with the question of any benefit to the brig.

There must be a decree for the libellants with costs, and a reference to a commissioner to ascertain the damages sustained by them by means of the collision in question.

NOTE. This decision was affirmed by the circuit court, on appeal, in August, 1873. In its opinion, the court (Woodruff, Circuit Judge)

said: "I think the conclusion of the district court in this case was correct. In a voluntary endeavor to deliver the appellants' vessel and cargo from the great peril of loss, the master cut her loose, in circumstances involving great risk of collision with the respondents' vessel, and, after she was cut loose, he omitted to cast her anchors, or put up a sail, or, in fact, do anything to arrest her, and for the like reason, namely, that taking such measures might prevent his delivering the vessel and cargo from the peril he was seeking to avoid. His acts and omissions in this respect were at the risk of his own vessel and her owners, and they are responsible. The master had no more legal right to do acts or omit precautions, which acts and omissions directly tended to injury to another, in order to save property to its owners, than he would have in order to earn property for them. On the question, whether the grounding of the libellants' vessel and the resulting damage were caused by the collision, the testimony is conflicting. But I find no sufficient reason for reversing the conclusion of the commissioner and of the district judge. The decree must be affirmed, with costs."